CO: TO JUDGE____PM

HON MARSHA PECHMAN

1

2 ⎵ FILED ____ ENTERED     **Copy Received**
____ LODGED ____ RECEIVED

3
AUG 20 2001    PM     AUG 20 2001

4
AT SEATTLE
CLERK U S DISTRICT COURT

5 WESTERN DISTRICT OF WASHINGTON    DEPUTY     **WILLIAMS KASTNER & GIBBS**
BY                                                  **SEATTLE**

6

7
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8
AT SEATTLE

9

10

11 PAUL CURTIS and NORMAN CURTIS, on
behalf of themselves and all others similarly

12 situated,                                            **CLASS ACTION**

13                        Plaintiffs,

14                vs                               NO C01-1270MJP

15 NORTHERN LIFE INSURANCE            FIRST AMENDED COMPLAINT
COMPANY,

16                        Defendant

17

18        Plaintiffs, by their attorneys, file this First Amended Complaint pursuant to Fed R Civ

19 P 15(a) before any responsive pleading has been served, and allege the following based upon

20 personal knowledge as to themselves and their own acts, and as to all other matters on

21 information and belief based upon an investigation by their counsel

22

23 

24
CV 01-01270 #00000003

25

FIRST AMENDED COMPLAINT                     - 1 -                              3
122800/082001 1359/65190001

**ORIGINAL**                              Betts
Patterson
Mines
One Convention Place Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

January 1, 1994, to the present date and during the pendency of this action (the "Class Period"), have been (a) individual policyholders of deferred annuity policies issued by Defendant Northern Life Insurance Company ("NoLIC"), hereinafter referred to as "Fixed Annuities," (b) individual certificate holders under group Fixed Annuities (who, for convenience, will also be referred to as "policyholders"), or (c) recipients as annuitants or beneficiaries of regular annuity payments under the Fixed Annuities (all of the foregoing to be referred to collectively as "Class Members" or "the Class")

2       During the period when the Class Members purchased their Fixed Annuities, NoLIC held itself out as a retirement planning specialist which offered, through a combination of high interest rates and tax-advantaged products, a highly competitive return on investments NoLIC particularly focused its marketing on school teachers and administrators, for many of whom funds deposited in Fixed Annuities constitute a substantial portion of their retirement savings

3       Fixed Annuities have two distinct phases  During the first, or "accumulation phase," the policyholder pays "premiums" into the annuity policy (often by way of salary deductions), and the funds paid in earn interest at a rate determined periodically by the company  During the second, or "payout phase," the company applies the accumulated principal and interest to the chosen payout option, providing periodic payments to the annuitant (and sometimes another beneficiary) over a fixed period or for life (or joint lives), and, during the payout phase, the accumulated funds continue to earn interest, again at a rate determined by the company

FIRST AMENDED COMPLAINT                    - 2 -
122800/082001 1349/65190001

Betts
Patterson
Mines
One Convention Place  Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

4       The economic value of the annuity to the policyholder is directly dependent on the rates of interest set by the company for both the accumulation phase and the payout phase, and on the relationship between those rates and the rates that would have been available during the same period from alternative investments

5       This action seeks to recover damages suffered by Fixed Annuity policyholders and their beneficiaries during the Class Period as a result of NoLIC's bad faith actions in setting its interest rates   Before and during the Class Period, NoLIC has marketed its Fixed Annuities on the basis of a highly competitive initial interest rate, has undertaken to set interest rates in the future based on market rates and other compatible factors, and has not disclosed the possibility that actual credited rates over the life of the policy could be set consistently and deliberately lower than the advertised rates   During the Class Period, after NoLIC has received premiums and issued annuity policies to consumers and the "free-look" period in which the consumers could cancel their policies without penalty has expired,  NoLIC has deliberately and arbitrarily reduced the interest rates actually credited to those policies to levels substantially below those rates which it has been contemporaneously advertising in order to sell additional policies, for the sole purpose of increasing its profits without adversely affecting sales of new policies   NoLIC has never disclosed to any members of the Class that its reduction of rates has been arbitrary and unrelated to market factors   In addition, NoLIC has effectively "locked in" its policyholders with multi-year withdrawal penalty provisions, so that policyholders who become dissatisfied with the low yield on their policies cannot withdraw their funds without

FIRST AMENDED COMPLAINT               - 3 -

Betts
Patterson
Mines
One Convention Place  Suite 1400
701 Pike Street
Seattle  Washington 98101-3927
(206) 292-9988

1    suffering a substantial loss   As a result of these actions Class Members have suffered and are

2    continuing to suffer substantial damages in lost interest

3                           **PARTIES, JURISDICTION AND VENUE**

4          6      Plaintiff Paul Curtis is a resident of Hillsborough County, New Hampshire

5    Plaintiff Norman Curtis (no relation to Paul Curtis) is a resident of Snohomish County,

6    Washington   Both Paul Curtis and Norman Curtis have held Fixed Annuities during the Class

7    Period

8          7      Defendant NoLIC is a life insurance company incorporated under the laws of the

9

10   State of Washington, and engages in the business of underwriting and issuing life insurance

11   policies and annuities   NoLIC has its domicile and principal place of business in King County,

12   Washington, at 1501 Fourth Avenue, Suite 1000, Seattle, Washington 98111-4328

13         8      Venue is proper in this court since Defendant is located in this county, and

14   Defendant's wrongful acts alleged herein occurred at Defendant's principal place of business in

15   this county

16

17           **FACTS UPON WHICH CLAIMS FOR RELIEF ARE BASED**

18   **NoLIC's Business and Industry Standards**

19         9      NoLIC began specializing in Fixed Annuities in the mid-1970s   By the mid-

20   1980's, Fixed Annuities were NoLIC's principal product

21         10     NoLIC uses preprinted form policies for its Fixed Annuities

22         11     NoLIC has at all relevant times marketed its Fixed Annuities as being highly

23   competitive, affording policyholders the opportunity to maximize their accumulation of

24

25

FIRST AMENDED COMPLAINT            - 4 -
122800/082001 1349/65190001

Betts
Patterson
Mines
One Convention Place  Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

retirement funds  All of NoLIC's contracts and marketing materials have originated and/or been approved at its principal office in this state

12      All of NoLIC's Fixed Annuity policies are sold with a highly competitive declared initial interest rate, but that initial rate applies only to premiums invested during the remainder of that same calendar year  Thereafter, interest credited to those premium payments is governed by NoLIC's uniform policy provision to the effect that interest rates will be declared from time to time by NoLIC's board of directors, subject to a low guaranteed minimum rate (usually 3 percent)

13      Fixed Annuities are marketed as long-term interest-accrual instruments, with premature withdrawals of funds being subject to both tax and contractual penalties  As to the former, there are various federal tax law restrictions and penalties on premature distributions (generally, distributions before the age of 59½) from Fixed Annuities unless the amounts distributed are rolled over to another annuity  Generally, a ten percent federal penalty tax is assessed against the entire amount of any such distribution  In addition, with respect to some annuities that are tax-qualified, such premature distributions are prohibited.  Moreover, because tax-qualified annuities are generally funded with pre-tax salary deductions or deductible contributions, an early withdrawal causes the principal contribution to be taxed, thus reducing the value of the tax deferral which is an important reason for most people to buy such annuities  All of these tax law restrictions and prohibitions, of which NoLIC was at all times fully aware, impose financial disadvantages and administrative difficulties on policyholders who may be dissatisfied with the accumulated yield on their policies and wish to withdraw or transfer their

FIRST AMENDED COMPLAINT                    - 5 -
122800/082001 1349/65190001

Betts
Patterson
Mines
One Convention Place  Suite 1400
701 Pike Street
Seattle  Washington 98101-3927
(206) 292-9988

1  funds  In essence, these factors enhance the effectiveness of NoLIC's contractual provisions

2  (described in the next paragraph) designed to lock in annuitants after they have made their

3  purchase in expectation that NoLIC will credit rates consistently and fairly

4       14     In addition to the tax consequences of premature withdrawals, the contractual

5  provisions of the Fixed Annuities provide that once funds are invested, they cannot be

6  withdrawn or transferred to another investment without incurring a substantial withdrawal or

7  surrender charge, which may be as high as 22 percent during the first year after the Fixed

8  Annuity is issued,  and decreases to zero only over an extended term that may be as long as

9  15 years  Although the surrender charge may be avoided by withdrawing the funds in

10 installments over five years, NoLIC reduces the interest rate paid during the 5-year withdrawal

11 period to a very low rate – well below the market, and often as low as 3 percent – which results

12 in a substantial loss of interest when compared to the interest that could have been earned in an

13 alternative investment during the same period  As a result of these contractual and

14 administrative provisions, as well as the tax penalties that also apply to premature withdrawals,

15 for many years after purchasing a Fixed Annuity policyholders are effectively "locked in," and

16

17 cannot transfer their moneys to another investment without incurring a substantial loss in the

18 value of their retirement fund

19

20       15     Because of this "lock-in" attribute of the NoLIC Fixed Annuities, the

21 attractiveness of the annuities to policyholders is driven by the reasonable expectation that over

22 the life of an annuity NoLIC will set renewal rates on an existing policy using the same

23 favorable methodology as was used to set the initial advertised rate on the newly issued policy

24

25

FIRST AMENDED COMPLAINT                  - 6 -
122800/082001 1349/65190001

Betts
Patterson
Mines
One Convention Place  Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

By repeated affirmations in its policies, disclosure statements, and quarterly statements to policyholders, NoLIC has acknowledged its contractual obligation to continue to set interest rates on existing policies on the same or more favorable basis as those on newly issued policies, and the company has never indicated to its policyholders, either before or after they have purchased their annuities and been "locked in" to their investments, that such a relationship may not be maintained, and in particular has never disclosed that after policyholders have held their policies for a certain period, the interest rates credited to their policies may be deliberately and arbitrarily depressed substantially below contemporaneously advertised rates for newly issued policies of the same form

16      Similarly, the value to the policyholder of the contractual provision permitting withdrawal of funds by periodic payments over a period of at least five years without penalty, depends on the implicit undertaking that during the payout phase interest on funds not yet withdrawn will continue to earn interest competitively at rates set on the basis of factors similar to those factors used to set the rates during the accumulation phase  NoLIC has never disclosed to its policyholders the possibility that the interest rate on payout options could be arbitrarily reduced such that it might bear no relation either to contemporaneously advertised rates on newly issued policies or to the yields on Northern Life's underlying investments

17      There are two legitimate and historically established industry practices that are used by insurance companies in setting rates for Fixed Annuities  Both methods, when properly followed, involve the application of a consistent methodology each time a new interest rate is set  Under the first method, known as the "portfolio" method, the company periodically

FIRST AMENDED COMPLAINT                      - 7 -
122800/082001 1349/65190001

Betts
Patterson
Mines
One Convention Place  Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

calculates the aggregate rate of return on its entire portfolio of investments underlying its annuity obligations, determines its expenses, reserve requirements and profit margin, and arrives at a single interest rate that is then applied to all funds invested in its annuities over the next period (month, quarter, etc )  This single interest rate is known as the portfolio rate, and it applies to all deposited funds, derived from both old and new premiums

18     Under the second recognized method of setting interest rates, known as "banding," the company segregates the funds invested in its annuities into historical "bands," each band covering a range of dates during which the respective premiums were paid in   Each band is matched with a pool of company investments purchased with the proceeds of those premiums   Relative rates credited on each band are determined on the basis of the actual relative yields on the respective investment pools   As investments in the older pools mature, the rates on the corresponding bands will be based on yields on the new investments purchased with the proceeds of the maturing investments

19     Consistency in using the same methodology for setting ongoing interest rates for existing policies as is used for setting the advertised initial interest rates for new policies is a vital element of any legitimate industry interest-rate-setting practice, without which the whole basis for the consumer's bargain in purchasing an investment with an extended surrender period is undermined   Under either of the two legitimate methods described above, policyholders can expect that portfolio or banded interest rates (as applicable) will over time maintain the same competitive relationship to the market in general and other comparable investments in particular that the initial advertised interest rates bore to contemporaneous rates

FIRST AMENDED COMPLAINT          - 8 -
122800/082001 1349/65190001

Betts
Patterson
Mines
One Convention Place  Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

for the market and other comparable investments   NoLIC's recognition of this basic principle

has been well demonstrated by its customary and longstanding practice of encouraging its

agents (and providing them with appropriate software) to give prospective customers

projections of future growth of their Fixed Annuities that assume an ongoing interest rate

exactly equal to the initial advertised rate being used to market the annuities   Implicit in this

level projection is the concept that under a consistently applied interest-rate-setting

methodology, policy interest rates are no more likely to go down than up over time, just as

market rates in general are no more likely to move in one direction or the other   By use of this

level projection model NoLIC has recognized that the proper setting of annuity interest rates

requires a methodology that is consistent over time, using the same factors in the same way for

setting rates for old money as are used to set the advertised interest rates for new money

     20     NoLIC in its actual rate-setting practice fails to live up to the standard whose

propriety it has thus acknowledged, in that over time NoLIC has deliberately and arbitrarily

depressed ongoing interest rates for old money as compared to either its advertised rates for

new money or actual market rates for old money, with the purpose of increasing its profits

without affecting its ability to make new sales

     21     NoLIC makes no disclosure in its policies or in any disclosure statements

delivered to purchasers at the time of sale that there will be any difference between the

methodology used to set the current advertised interest rate and the methodology that will be

used to set interest rates over the life of the policy, or that its interest rates are likely to become

FIRST AMENDED COMPLAINT     - 9 -
122800/082001 1349/65190001

Betts
Patterson
Mines
One Convention Place  Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1    any less competitive over time   To the contrary, a Consumer Disclosure Information form used

2    in marketing Fixed Annuities states as follows

3              "Northern Life wishes to credit high current interest to its
                policyholders who make large or continuing payments to their
4                annuities       "

5    22     Another provision that appears in some NoLIC Fixed Annuity policies and in

6    Consumer Disclosure Information forms used in marketing other Fixed Annuity policies, reads

7    as follows (with slight variations)

8              "In setting interest rates, Northern Life considers many factors,
9                including, but not limited to, investment yield rates, taxes, policy
                 persistency and other experience factors "
10

11   NoLIC has routinely included this same statement in many quarterly account statements

12   for all of its Fixed Annuity policyholders, thus affirming not only that actual yields on

13   underlying investments will be taken into account in setting all rates, but that persistency (i.e.,

14   the length of time during which a policy has been in effect) will be considered a favorable

15   factor in setting rates   In fact, contrary to this representation,  not only are actual yields

16   disregarded with respect to old money, but persistency is in effect punished because only recent

17   premiums receive NoLIC's high advertised rates

18

19   23     All of NoLIC's Consumer Disclosure Statements used in marketing Fixed

20   Annuities begin with the following statement (with minor variations)

21              "Northern Life Insurance Company believes an individual
                 purchasing an annuity should have the benefit of all information
22               which might affect his or her decision "

23

24

25

FIRST AMENDED COMPLAINT          - 10 -
122800/082001 1349/65190001

Betts
Patterson
Mines
One Convention Place  Suite 1400
701 Pike Street
Seattle  Washington 98101-3927
(206) 292-9988

This statement effectively constitutes a binding representation by NoLIC in all of its annuity contracts that it will not use the discretion it has retained, in regard to changing interest rates from time to time, in any adverse way not disclosed to policyholders at the time of sale

**NoLIC's Improper Practices**

24      NoLIC departs from legitimate industry rate-setting practices described above, in that it deliberately and arbitrarily depresses interest rates for both the accumulation phase and the payout phase of its Fixed Annuities, after having advertised a competitive current interest rate at the time of sale   NoLIC nominally bands funds according to the dates on which premiums are received, but in fact determines the interest rates to be credited to older bands not on the basis of the yield on underlying pools of investments, but simply as a means of increasing its profit margin   At the same time, in order to be able to continue to attract new premiums, it maintains the competitive level of the advertised rates credited on new premiums The rates on new premiums are the only rates which a consumer is able to compare to rates available on alternative investments, and the only rates which NoLIC must keep high in order to entice a consumer to make a decision to deposit funds with Northern Life before being trapped by surrender charges and tax penalties

25      NoLIC's systematic reduction of rates after the consumer is locked in and without prior disclosure constitutes a breach of its express and implied contractual obligations under its annuity contracts, as well as a failure to exercise its contractual discretion to set rates in good faith, and a breach of its fiduciary duty as an insurer, namely, its enhanced duty of

FIRST AMENDED COMPLAINT              - 11 -
122800/082001 1349/65190001

Betts
Patterson
Mines
One Convention Place  Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1
2
3
4
5
6
7
8
9

good faith to deal fairly with an insured, giving equal consideration in all matters to the insured's interests  The legitimate application of banding during the Class Period would have resulted in the crediting of aggregate rates of interest on old premium bands as high or higher than the announced current rates, because the yields on older investments were substantially higher than yields available on new investments  In fact, because of NoLIC's arbitrary reduction of old money rates, except for a few months in early 1994, NoLIC's old money rates have been consistently and substantially below its advertised rates for new money during the entire Class Period

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

26     NoLIC has never disclosed to any of the Class the fact that it arbitrarily reduces rates on old premiums  During the period April 1993 through March 1997, NoLIC's quarterly statements to existing policyholders disclosed the actual current rates on the various premium bands then in effect, but provided no information on the criteria used in setting the rates, except for the inaccurate statement quoted above in paragraph 22 regarding investment yields and policy persistency  After March 1997, statements sent to Class Members have contained certain historical average rates of return assuming certain hypothetical premium payment patterns, but have not provided any information from which a policyholder could determine actual interest rates applied to old and new bands  In short, during the Class Period NoLIC has failed to disclose to policyholders what it has been doing with the interest rates, and has prevented them from discovering that the company in fact has been improperly lowering interest rates for older funds once policyholders are locked in, leaving them with noncompetitive rates on a large portion of their investment

FIRST AMENDED COMPLAINT          - 12 -
122800/082001 1349/65190001

Betts
Patterson
Mines
One Convention Place  Suite 1400
701 Pike Street
Seattle  Washington 98101-3927
(206) 292-9988

27      Many policyholders who have been dissatisfied with the overall cumulative yield on their invested funds have been unable to transfer their funds to another investment without suffering a penalty, since the terms of NoLIC's Fixed Annuity policies provide that a surrender charge of up to 22 percent becomes due upon any such transfer in a lump sum Should a policyholder seek to avoid an express surrender charge by transferring funds over a period of five years or more in installment payments, the interest rate effectively paid during such period is even less than the interest rate paid on the older bands of funds during the accumulation phase, resulting in a substantial loss of interest over the 5-year withdrawal period, which constitutes an implicit unbargained-for surrender charge

28      The Fixed Annuities issued by NoLIC typically provide that at attainment of age 70½, or at any earlier time designated by the policyholder, the annuity policy may be converted into a "Supplementary Contract" that provides for regular monthly payments for a fixed period, or for a period measured by the life of the annuitant and/or a joint annuitant  The level of the monthly payments is determined by starting with the accumulated Account Value, and subtracting any loans and loan interest that may be owing  The resulting Net Account Value is then used together with either the fixed period elected, or the mortality tables in the case of a lifetime payment election, and an interest rate selected by the company, to compute the monthly payment amount  The end result is that the Net Account Value will be sufficient to fund the scheduled series of monthly payments, taking into account the fact that the funds will continue to earn interest during the payout period at the interest rate selected or assumed by the company

FIRST AMENDED COMPLAINT          - 13 -
322800/082001 1349/65190001

Betts
Patterson
Mines
One Convention Place, Suite 1400
701 Pike Street

29      The interest rate selected by NoLIC when issuing a Supplementary Contract is thus directly comparable to the interest rate set periodically for bands of invested premiums Although the Net Account Value is not maintained as a segregated account in the policyholder's name after issuance of the Supplementary Contract, and does not actually accrue interest that is credited to the particular policyholder's account, as is the case during the accumulation phase of the annuity policy, nevertheless for purposes of computation of the amount of the monthly annuity payment, the declining balance of the Net Account Value is deemed to continue accruing interest for the length of the annuity payout period, at the rate set by the company upon issuance of the Supplementary Contract The interest rate selected for the Supplementary Contract is therefore just as important to the policyholder as the interest rate set periodically on bands of invested premiums during the buildup of the annuity in the accumulation phase, and serves the identical purpose of augmenting the moneys available to fund the annuity payout

30      The typical policy does not state specifically how the interest rate is to be set for establishment of an annuity payout schedule   However, the policies state a guaranteed rate and provide that a higher rate may be available at the time the election is made   There is absolutely no disclosure or implication that the method used to set the rate for the annuity payout will be different from the method used to set the current interest rate or the other rates applicable during the accumulation phase   On the contrary, at least one form of policy expressly repeats in the "Settlement Options" section the same assurance regarding the factors used to set interest

FIRST AMENDED COMPLAINT             - 14 -
122800/082001 1349/65190001

Betts
Patterson
Mines
One Convention Place Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1  rates as is set forth in Consumer Disclosure Information forms and in quarterly account

2  statements to policyholders

3            "In setting Settlement Option rates, we consider many factors,
           including, but not limited to investment yield rates, taxes, policy
4            persistency, and other experience factors"

5       In fact, contrary to this explicit provision and contrary to the policyholder's reasonable

6  expectation, NoLIC disregards actual yield rates and policy persistency  During the Class

7  Period, NoLIC has deliberately and arbitrarily either set the interest rate for shorter fixed-period

8  payouts at the bare minimum rate of between 2 and 3½ percent, or for longer payouts at a

9
   substantially lower rate than that credited even to old money bands in the accumulation phase
10
   This substantial arbitrary lowering of the interest rate in the payout phase has resulted in a
11
12  corresponding reduction in the amount of the payments to Class Members who have elected a

13  payout option, in addition to the reduction attributable to the undercrediting of interest during

14  the accumulation phase of their policies

15
        31      As a direct result of the improper practices described above followed by NoLIC
16
   during both the accumulation phase and the payout phase, NoLIC has improperly retained for
17
18  itself and its stockholders funds which should have been part of the retirement benefits of its

19  policyholders, and Class Members have thereby sustained substantial damages, and will

20  continue to suffer further such damages in the future unless this Court grants appropriate

21  declaratory and injunctive relief

22
        32      Because of the lack of disclosure in the quarterly statements sent to
23
   policyholders by NoLIC, and the absence of any other adequate explanation provided by
24

25

FIRST AMENDED COMPLAINT              - 15 -
122800/082001 1349/65190001

Betts
Patterson
Mines
One Convention Place Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

NoLIC to its policyholders, Class Members have had no notice, and no reasonable means of discovering, NoLIC's improper practices of arbitrarily lowering interest rates, both for older bands of invested funds during the accumulation phase, and for all funds during the payout phase

## ALLEGATIONS REGARDING INDIVIDUAL PLAINTIFFS

### Plaintiff Paul Curtis

33      Plaintiff Paul Curtis is employed as a school teacher at RSEC Academy in Amherst, New Hampshire

34      Paul Curtis purchased two Fixed Annuities from NoLIC in or about October, 1986, and January, 1987, for the purpose of saving money for retirement   He funded each of the Fixed Annuities with a single lump-sum premium, and made no periodic payments thereafter

35      At the time he purchased his Fixed Annuities, Paul Curtis was quoted a high current interest rate that was very competitive with alternative investments

36      In conjunction with NoLIC's sale of the Fixed Annuities to Paul Curtis, the company gave him no materials which indicated in any way that NoLIC might at any time in the future apply a less favorable methodology in setting future interest rates for old money than for new money, resulting in substantially lower and less competitive interest rates for all invested premiums as they aged

37      After buying his Fixed Annuities, Paul Curtis received quarterly account statements from NoLIC   Some of these quarterly statements showed the date ranges of various

FIRST AMENDED COMPLAINT                    - 16 -
122800/082001 1349/65190001

Betts
Patterson
Mines
One Convention Place  Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1
2
3

bands of invested premiums, with the current year's interest rate applicable to each   However,

the statements did not disclose what factors were used to set the interest rates for each band

On the back of many of the quarterly statements was printed the following statement

4
5

> "In setting interest rates, we consider many factors, including, but
> not limited to, investment yield rates, taxes, policy persistency
> and other experience factors "

6
7
8
9
10
11
12

38      In fact, from 1994 until the date on which Paul Curtis surrendered his Fixed

Annuities, in violation of NoLIC's undertakings and duties in respect thereto, and contrary to

its express assurances as set forth in the preceding paragraph, NoLIC arbitrarily and in bad faith

reduced the interest rates for older bands of invested premiums in relation to market rates and

new money rates, without regard to actual yields on its respective investments, thereby

effectively punishing policyholders with good persistency, as set out in more detail above

13
14
15
16
17

39      As a result of NoLIC's breach of its undertakings and duties with respect to his

Fixed Annuity Contracts, Paul Curtis has sustained actual damages consisting of the amount by

which interest was undercredited to his account, and compounded interest he would have

earned thereon, through the date of surrender of his policies

18
19
20
21

40.      At no time after purchasing the Fixed Annuities has Paul Curtis received any

statement from NoLIC disclosing the factors or computations used in setting interest rates for

various bands of premiums, or enabling him to determine that NoLIC was arbitrarily

discounting the old money rates, as compared to the new money rate

22
23
24
25

FIRST AMENDED COMPLAINT                    - 17 -
122800/082001 1349/65190001

Betts
Patterson
Mines
One Convention Place Suite 1400
701 Pike Street
Seattle Washington 98101-3927
(206) 292-9988

**Plaintiff Norman Curtis**

41      Plaintiff Norman Curtis is currently retired, having formerly been employed as a school teacher by the Edmonds School District in Lynnwood, Washington

42      Norman Curtis purchased two Fixed Annuities from NoLIC in or about August, 1986, and September, 1987, for the purpose of saving money for retirement   He made a number of periodic monthly salary reduction contributions to each of the Fixed Annuities through an arrangement with his employer

43      At the time he purchased his Fixed Annuities, Norman Curtis was quoted a high current interest rate that was very competitive with alternative investments

44      In conjunction with NoLIC's sale of the Fixed Annuities to Norman Curtis, the company gave him no materials which indicated in any way that NoLIC might at any time in the future apply a less favorable methodology in setting future interest rates for old money than for new money, resulting in substantially lower and less competitive interest rates for all invested premiums as they aged

45      After buying his Fixed Annuities, Norman Curtis received quarterly account statements from NoLIC   Some of these quarterly statements showed the date ranges of various bands of invested premiums, with the current year's interest rate applicable to each   However, the statements did not disclose what factors were used to set the interest rates for each band   On the back of many of the quarterly statements was printed the following statement

> "In setting interest rates, we consider many factors, including, but not limited to, investment yield rates, taxes, policy persistency and other experience factors "

FIRST AMENDED COMPLAINT                    - 18 -
122800/082001 1349/65190001

Betts
Patterson
Mines
One Convention Place  Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

46    In fact, from 1994 until the date on which Norman Curtis surrendered his Fixed Annuities, in violation of NoLIC's undertakings and duties in respect thereto, and contrary to its express assurances as set forth in the preceding paragraph, NoLIC arbitrarily and in bad faith reduced the interest rates for older bands of invested premiums in relation to market rates and new money rates, without regard to actual yields on its respective investments, thereby effectively punishing policyholders with good persistency, as set out in more detail above

47    As a result of NoLIC's breach of its undertakings and duties with respect to his Fixed Annuity Contracts, Norman Curtis has sustained actual damages consisting of the amount by which interest was undercredited to his account, and compounded interest he would have earned thereon, through the date of surrender of his policies

48    At no time after purchasing the Fixed Annuities has Norman Curtis received any statement from NoLIC disclosing the factors or computations used in setting interest rates for various bands of premiums, or enabling him to determine that NoLIC was arbitrarily discounting the old money rates, as compared to the new money rate

## CLASS ACTION ALLEGATIONS

49    This lawsuit is ideal for treatment as a class action since all Class Members have been injured by the same breaches by NoLIC of its contractual and good faith obligations, namely, NoLIC's deliberately and arbitrarily changing its interest-rate-setting methodology to its customers' disadvantage, without having reserved the right to do so, and after its customers were locked into their Fixed Annuities by long-term surrender charges

FIRST AMENDED COMPLAINT          - 19 -
122800/082001 1349/65190001

Betts
Patterson
Mines
One Convention Place Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

50      Plaintiffs bring this case on behalf of themselves individually and as a class action on behalf of all persons who have been, at any time during the Class Period, (a) individual policyholders of Fixed Annuities, (b) individual certificate holders under group Fixed Annuities, or (c) recipients as annuitants or beneficiaries of regular annuity payments under annuity contracts issued under the provisions of the Fixed Annuities, but excluding any person who is or was an officer or director of NoLIC or of any affiliate of NoLIC, or a member of the immediate family of any officer or director of NoLIC or of any affiliate of NoLIC, or the heir, successor or assign of any such excluded person, and further excluding any person whose claim would be preempted by the Employee Retirement Income Security Act of 1974 or any other federal law

51      This action is properly brought as a class action pursuant to Rule CR 23(a), 23(b)(2), and 23(b)(3) of the Washington Superior Court Civil Rules

52      The Class Members are so numerous that joinder of all members is impracticable   Although the exact number of Class Members is unknown, Plaintiffs believe that they number in the hundreds of thousands   Their identities and addresses can be readily ascertained from NoLIC's records of policyholders and annuitants

53      There are numerous and substantial questions of law and fact common to all Class Members that control this litigation and that predominate over any individual issues Among these common questions are

(a)      Whether NoLIC has, during the accumulation phase of its Fixed Annuities, deliberately and arbitrarily lowered interest rates for older "bands" of funds invested

FIRST AMENDED COMPLAINT          - 20 -
122800/082001 1349/65190001

Betts
Patterson
Mines
One Convention Place Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1
2

in its Fixed Annuities, below the rates that would be derived from application of a valid

methodology consistent with that used to set advertised new money rates,

3
4
5

(b)      Whether such arbitrary lowering of old money rates during the

accumulation phase, without having reserved the right to do so, has violated the terms of

NoLIC's Fixed Annuity policies,

6
7
8
9
10

(c)      Whether such arbitrary lowering of old money rates during the

accumulation phase, after policyholders have been locked in by substantial withdrawal

penalties, has violated NoLIC's implied covenant of good faith and fair dealing inherent in

each of its Fixed Annuity contracts,

11
12

(d)      Whether such arbitrary lowering of old money rates during the

accumulation phase has violated NoLIC's good faith duty as an insurer to its insureds,

13
14
15
16
17

(e)      Whether NoLIC, in setting the interest rates for the payout phase of its

Fixed Annuities, has applied arbitrarily low interest rates inconsistent with the rates that would

have been derived from application of a valid methodology consistent with that used to set

advertised new money rates,

18
19
20

(f)      Whether such application by NoLIC of arbitrarily low rates during the

payout phase of its Fixed Annuities, without its having reserved the right to do so, has violated

the terms of its annuity policies,

21
22
23
24
25

(g)      Whether such application by NoLIC of arbitrarily low rates during the

payout phase of its Fixed Annuities has violated NoLIC's implied covenant of good faith and

fair dealing inherent in each of its Fixed Annuity contracts,

FIRST AMENDED COMPLAINT              - 21 -
122800/082001 1349/65190001

Betts
Patterson
Mines
One Convention Place Suite 1400
701 Pike Street
Seattle Washington 98101-3927
(206) 292-9988

1    (h)    Whether such application by NoLIC of arbitrarily low rates during the

2    payout phase of its Fixed Annuities has violated NoLIC's good faith duty as an insurer to its

3    insureds,

4    (i)    Whether NoLIC would be unjustly enriched if it is allowed to retain the

5    moneys it should have credited and paid out to Class Members in the form of higher interest,

6    and any earnings realized by NoLIC on such retained moneys,

7    (j)    Whether Plaintiffs and other Class Members are entitled to equitable

8    relief, including the imposition of a constructive trust in regard to funds retained by NoLIC as

9    the result of its improper interest-rate-lowering scheme, and all earnings realized by NoLIC on

10    such retained funds,

11    

12    (k)    Whether Plaintiffs and other Class Members have sustained damages

13    recoverable from NoLIC as the result of such wrongful conduct, and the proper formula for

14    measurement of such damages,

15    (l)    Whether NoLIC's practices as alleged herein, and its failure to

16    adequately disclose such practices to its policyholders, constitute violations of the Washington

17    Consumer Protection Act, and whether Plaintiffs and other Class Members are entitled under

18    

19    the provisions of that Act, specifically RCW 19 86 090, to recover up to three times the amount

20    of their actual damages, and

21    (m)    Whether Plaintiffs and other Class Members are entitled to an award of

22    attorneys' fees and costs

23    

24    

25    

FIRST AMENDED COMPLAINT          - 22 -
122800/082001 1349/65190001

Betts
Patterson
Mines
One Convention Place Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

54     Plaintiffs' claims are typical of the claims of other Class Members, and Plaintiffs' losses have been caused by the same wrongful conduct that gives rise to the claims of all other Class Members

55     Plaintiffs have no interest adverse to those of the other Class Members Plaintiffs will fairly and adequately protect the interests of other Class Members, and have retained counsel experienced and competent in the prosecution of class actions and complex litigation

56     NoLIC has acted on grounds generally applicable to the Class, in that it has issued to all of the Class Members annuity policy contracts, disclosure statements, and periodic statements containing substantially identical terms, and has followed uniformly the same improper practices in regularly crediting interest at the same arbitrarily low rates to all funds deposited by the Class Members in their Fixed Annuities, thereby making appropriate final injunctive and corresponding declaratory relief for the Class as a whole

57     The questions of law and fact listed above predominate over any questions affecting only individual Class Members, in that the determination of those common questions will be the same for all Class Members, and if decided in favor of Plaintiffs will entitle all Class Members to relief, whereas the only individual facts that will be applicable to Class Members will be the time periods and amounts involved in their respective Fixed Annuity investments or in the annuity payments made under their respective annuity contracts, and will be relevant not to the question of whether the Class Members are entitled to relief, but only to setting the appropriate amount of damages in each case

FIRST AMENDED COMPLAINT            - 23 -
122800/082001 1349/65190001

Betts
Patterson
Mines
One Convention Place Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

58      A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, among other things

(a)      Without a class action, the Class Members will be unable to obtain compensation for the funds of which they were deprived as a result of NoLIC's actions,

(b)      Given the substantial complexity of this litigation, the relatively small amount of damages sustained by most or all of the Class Members, and the fact that most Class Members are salaried or retired school employees unlikely to have sufficient funds to pursue litigation to vindicate their rights in individual actions, it is unlikely that the wrongs committed by NoLIC could be redressed otherwise than by a class action, and thus Class Members have no interest in individually controlling the prosecution of separate actions against NoLIC,

(c)      This action will foster an orderly and expeditious administration of the claims of Class Members, economies of time, effort, and expense, and uniformity of decision,

(d)      Following the determination of NoLIC's liability, with respect to which the law and factual issues appear to be substantially the same, the calculation of the individual damages of each Class Member will be easily ascertainable from NoLIC's records,

(e)      Plaintiffs are aware of no litigation concerning this controversy currently pending against NoLIC in any other forum by any Class Member,

(f)      It is desirable to concentrate all of the claims of Class Members in this forum because NoLIC is located in this county, the Fixed Annuities have all been issued in this county, NoLIC's improper practices have been occurring in this county, accounting records for the Fixed Annuities have been kept in this county, and all payments to annuitants have been

FIRST AMENDED COMPLAINT            - 24 -
122800/082001 1349/65190001

Betts
Patterson
Mines
One Convention Place Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

made in this county, and accordingly it is both proper and efficient to apply Washington law to the claims of all Class Members, and such can most readily be done in this forum, and

(g)   This action presents no difficulty that would impede the Court's management of it as a class action, and it is the best available means by which Class Members can seek redress for the harm caused to them by NoLIC

## CAUSES OF ACTION

## COUNT I

## (Washington Consumer Protection Act)

59   Plaintiffs repeat and reallege the allegations set forth above as if fully set forth herein

60   NoLIC's practices of deliberately and arbitrarily lowering old money rates, without prior disclosure and after policyholders have been locked in, thus enabling NoLIC to continue to sell its annuities by advertising interest rates consistently and substantially higher than those being contemporaneously used in crediting interest to existing policies, and NoLIC's continuing nondisclosure of such practices to existing policyholders and to new policyholders of Fixed Annuities, all constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of a trade or commerce, and thus constitute violations of the Washington Consumer Protection Act, specifically RCW 19 86 020   Such practices of NoLIC also constitute breaches of NoLIC's duty of good faith under the Washington Insurance Code, specifically RCW 48 01 030 and RCW 48 30 010, and thereby also constitute breaches of the Washington Consumer Protection Act, specifically RCW 19.86 020

FIRST AMENDED COMPLAINT               - 25 -
122800/082001 1349/65190001

Betts
Patterson
Mines
One Convention Place  Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1   61     Class Members have been damaged as a result of the above breaches by NoLIC

2   in an amount to be determined at trial, and are entitled under the Washington Consumer

3   Protection Act, RCW 19 86 090, to recover up to three times their actual damages and, in

4   addition, their legal costs, including reasonable attorneys' fees

## COUNT II

### (Breach of Contract)

62     Plaintiffs repeat and reallege the allegations set forth above as if fully set forth
herein

63     The Fixed Annuities constitute binding contracts between NoLIC and Class
Members

64     Under the Fixed Annuities, NoLIC has had and still has a duty to continue to use
the same methodology in setting all interest rates during the life of the annuities as used in
setting the initial interest rate used to market the annuities, to take account of actual yields on
investments corresponding to given bands of funds in setting rates on those bands, and to treat
old money no less favorably in setting rates than new money

65     Defendant has breached its contracts with Class Members by changing its
interest-rate-setting methodology without having reserved the right to do so at the time of sale,
and by deliberately and arbitrarily lowering interest rates for older bands of invested funds in
the accumulation phase, and for all funds in the payout phase, without regard to the relative
yields on the respective pools of investments backing those bands

FIRST AMENDED COMPLAINT              - 26 -
122800/082001 1349/65190001

Betts
Patterson
Mines
One Convention Place Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

66     The Fixed Annuity contracts between NoLIC and Plaintiffs and Class Members contain an implied covenant of good faith and fair dealing, in that the contracts by their terms give NoLIC as one party to the contract discretionary authority to determine certain terms of the contract   NoLIC's duty of good faith to exercise its rate-setting discretion fairly is heightened by the fact that the terms of the Fixed Annuities lock in purchasers for up to 15 years by prohibiting withdrawals during that period without substantial penalties

67     NoLIC has breached the implied covenant of good faith and fair dealing under the Fixed Annuities, by deliberately and arbitrarily changing its interest-rate-setting methodology on old money so as to depress interest rates used to credit interest to outstanding policies systematically and substantially below the rates advertised for new premiums, and by deliberately and arbitrarily lowering interest rates for all funds in the payout phase, all for the sole purpose of increasing its profits while continuing to attract new business by quoting misleading and unrealistically high rates for new premiums

68     NoLIC's breaches of its contractual obligations under the Fixed Annuities have resulted in monetary damage to Class Members, in the amount that would have been credited to their policies during the accumulation phase but for NoLIC's arbitrary reduction of interest rates on old money bands, plus the amount that would have been credited during the payout phase, in the case of policies that were annuitized, but for NoLIC's arbitrary reduction of payout phase interest rates, plus compounded interest on both amounts

FIRST AMENDED COMPLAINT                  - 27 -
122800/082001 1349/65190001

Betts
Patterson
Mines
One Convention Place  Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1

## COUNT IV

2

### (Breach of Fiduciary Duty)

3    69    Plaintiffs repeat and reallege the allegations set forth above as if fully set forth

4    herein

5    70    NoLIC's actions as alleged above have constituted breaches of its fiduciary duty

6
     as an insurer, in that NoLIC by such actions has failed to deal fairly with the insured Class
7
8    Members, and to give equal consideration in all matters to their interests

9    71    NoLIC's breaches of its fiduciary duty as an insurer have resulted in monetary

10   damage to Class Members, as alleged above

11

## COUNT V

12

### (Unjust Enrichment and Imposition of Constructive Trust)

13
     72    Plaintiffs repeat and reallege the allegations set forth above as if fully set forth
14
15   herein

16   73    As a result of the relationships between the parties and the facts alleged above, a

17   constructive trust should be imposed on all moneys retained by NoLIC resulting from the

18   interest cost savings generated by NoLIC's arbitrary lowering of interest rates applicable to

19   older bands of invested premiums during the accumulation phase, and to all funds during the

20   payout phase, and on all of NoLIC's earnings on such retained moneys

21   74    NoLIC will be unjustly enriched if it is allowed to retain such funds, and
22
     therefore a constructive trust should be imposed on all such moneys wrongfully obtained by it,
23
24   and all earnings thereon

25

FIRST AMENDED COMPLAINT                    - 28 -
122800/082001 1349/65190001

Betts
Patterson
Mines
One Convention Place  Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

75      By reason of the foregoing, Class Members have been damaged, and are entitled

to imposition of a constructive trust as set forth above

## COUNT VI

### (Declaratory and Injunctive Relief)

76      Plaintiffs repeat and reallege the allegations set forth above as if fully set forth

herein

77      As a result of the foregoing, Class Members are entitled to a declaration of their

rights, duties, and benefits under the Fixed Annuities, and under Supplementary Contracts

issued or to be issued thereunder

78      Plaintiffs and Class Members are also entitled to an injunction prohibiting

NoLIC from continuing the improper practices alleged herein

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the other Class

Members, pray for judgment and relief as follows

A   Declaring this to be a proper class action, and certifying Plaintiffs as representatives

of the Class and their counsel as Class Counsel,

B   Granting Class Members declaratory, injunctive, and other equitable relief,

including, inter alia, a judgment and order (1) declaring NoLIC's interest-rate-setting practices

to be improper, as herein alleged, and (2) requiring NoLIC to stop arbitrarily reducing interest

rates for older bands of money in the accumulation phase and for all funds in the payout phase,

FIRST AMENDED COMPLAINT                 - 29 -
122800/082001 1349/65190001

Betts
Patterson
Mines
One Convention Place  Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

and to set such interest rates in both phases by applying the same factors in the same way as used to set the advertised initial interest rates offered to persons paying new premiums to NoLIC,

C   Awarding Class Members damages for breach of contract in the amounts alleged above,

D   Awarding Class Members damages in tort proximately caused by NoLIC's breach of its fiduciary duty, in the amounts alleged above,

E   Awarding Class Members treble damages in accordance with the Washington Consumer Protection Act, RCW 19 86 090,

F   Imposing a constructive trust on all profits and earnings received or retained by NoLIC as the result of its savings from the improper underpayment of interest on invested premiums and the improper underpayment of annuities under Supplementary Contracts, together with interest,

G   Establishing a claims resolution facility for the determination of any individual issues that remain after trial of class-wide issues,

H   Awarding Plaintiffs their costs and expenses incurred in connection with this action, including reasonable attorneys' fees, expert witness fees, and other costs, and

I   Awarding Plaintiffs and Class Members such other and further relief as may be just and proper

FIRST AMENDED COMPLAINT                    - 30 -
122800/082001 1349/65190001

Betts
Patterson
Mines
One Convention Place Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

1

2      DATED this 20th day of August, 2001

3                      BETTS, PATTERSON & MINES, P S

4

5      By

6              Christopher W  Tompkins, WSBA #11686

7
               One Convention Place, Suite 1400
8              701 Pike Street
               Seattle, Washington  98101-3927
9              (206) 292-9988

10                     SULLOWAY & HOLLIS, P L L C
11             Fred L  Potter
               John B  Garvey
12             James O  Barney
               John R  Harrington
13
               9 Capitol Street
14             Concord, NH  03301
               (603) 224-2341
15
16                     BERMAN, DEVALERIO & PEASE LLP
               Michael G  Lange
17
               One Liberty Square
18             Boston, MA  02109
               (617) 542-8300
19

20

21

22

23

24

25

FIRST AMENDED COMPLAINT                - 31 -
122800/082001 1400/65190001

Betts
Patterson
Mines
One Convention Place  Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988

**CERTIFICATE OF SERVICE**

The undersigned certifies under the penalty of perjury under the laws of the State of Washington that I am now and at all times herein mentioned, a citizen of the United States, a resident of the state of Washington, over the age of eighteen years, not a party to or interested in the above-entitled action, and competent to be a witness herein.

On August 20, 2001 I caused to be served via U.S. Mail and by legal messengers a copy of the **First Amended Complaint** on counsel as shown below:

Jerry B. Edmonds                                    Via Legal Messenger
Williams, Kastner & Gibbs
Two Union Square, Suite 4100
Seattle, WA  98101-2380

Joseph L Hamilton                                   Via U.S. Mail
Marc S. Murphy
Marjorie A Farris
Stites & Harbison PLLC
400 West Market Street, Suite 1800
Louisville, KY 40202-3352

Attorneys for Defendant Northern Life Insurance.

Dated this 20th day of August, 2001

Barbara J. Conger

FIRST AMENDED COMPLAINT                - 32 -
122800/082001 1427/65190001

Betts
Patterson
Mines
One Convention Place, Suite 1400
701 Pike Street
Seattle, Washington 98101-3927
(206) 292-9988